IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 10, 2004 Session

## CHARLIE M. GARDNER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-D-2814     Cheryl Blackburn, Judge**

_____

**No. M2003-01036-CCA-R3-PC - Filed April 16, 2004**

_____

The Defendant, Charlie M. Gardner, was convicted by a jury of first degree murder and two counts of aggravated assault. In this post-conviction proceeding, the Defendant alleges that he received the ineffective assistance of counsel during his trial; that he was denied due process by being denied the right to testify; and that the trial court erred in one of its jury instructions. After an evidentiary hearing, the trial court denied relief and this appeal followed. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Dwight Scott, Nashville, Tennessee, for the appellant, Charlie M. Gardner.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant's convictions arose out of a shooting incident at a nightclub which left one of the security staff dead. The Defendant's first trial resulted in a hung jury. The Defendant's ineffective assistance of counsel claim arises from his trial lawyer's failure to call as a witness at the second trial a Mr. Terrence Deon Reames, and also his lawyer's failure to request a jury-out hearing to determine the admissibility of certain evidence.

Mr. Reames testified at the post-conviction hearing that he has known the Defendant since childhood. He was at the nightclub when the shooting occurred. He described the club as "[c]rowded, a lot of people, a lot of girls." Within an hour after his arrival, he saw the Defendant. Mr. Reames testified:

[The Defendant] came in and I'd say about, we shook hands, not even a minute, some shots rang out and I think it was like two at first, but he turned and he was running and I got behind him and was running, you know, he's a big guy. He was moving through the crowd and I got behind him and after we made it out of the club, he went left and I went straight to my car.

Mr. Reames stated that he had had nothing to drink that night, nor had he taken any "mind-altering" drugs. He testified that he saw no gun in the Defendant's hand and that the Defendant did not shoot anyone that night. He explained that he had been within a "hand reach" of the Defendant when the shooting occurred and would have "clearly" seen if the Defendant had shot anyone. Mr. Reames testified that he did not see who did the shooting and did not see the victim. He described the scene as "We just heard the shots and people was like hysterical. They was moving, so [the Defendant] was moving and I got right behind him. We ran out the club."

Mr. Reames testified that, prior to trial, the Defendant's lawyer came to see him. Mr. Reames stated that he told the lawyer what he had just testified to, and that he would be willing to come to the Defendant's trial. He testified that the Defendant's lawyer told him, "I need you to come to trial." Mr. Reames stated that he gave the lawyer his pager number and the numbers at his house and his aunt's house. Mr. Reames did not hear from the lawyer again. Mr. Reames admitted that he had been smoking marijuana at the time he spoke with the Defendant's lawyer.

On cross-examination, Mr. Reames stated that he did not know where in the club the shots were fired, but that they were not fired right next to where he was standing. The trial court also questioned Mr. Reames, during which he stated that the Defendant had been in front of him when he heard the gunshots, and that the Defendant was not near the gunshots.

Mr. Ed Fowlkes, the Defendant's trial lawyer, also testified. He stated that his primary practice was in criminal law and that he represented the Defendant in both trials. He had been practicing approximately twenty years prior to representing the Defendant. He stated that he discussed the case with the Defendant, including the State's evidence against him. The primary issue was the perpetrator's identity. During the second trial, he was assisted by his partner, Tom Whiteside. He also employed an investigator.

With respect to his interview of Mr. Reames, Mr. Fowlkes testified that Mr. Reames was "almost incoherent." He appeared "high" to Mr. Fowlkes, and Mr. Fowlkes "had a hard time communicating with him." Mr. Fowlkes stated that Mr. Reames "didn't give [him] any information at the time that was helpful," and that "the conversation didn't go very well." Mr. Fowlkes stated that he did not remember telling Mr. Reames that he was going to subpoena him, and stated further that he "would never subpoena anybody that [he] didn't know what they were going to say on the witness stand."

In his post-conviction petition, the Defendant also alleges that Mr. Fowlkes failed to request a jury-out hearing with respect to evidence about some threats the Defendant had made prior to the shooting. Mr. Fowlkes described the incident, which was testified to by several witnesses at the trial.

About a month prior to the shooting, the Defendant had been engaged in an altercation with someone at the club on the dance floor. The victim, in his role as one of the security staff, told the Defendant to leave. In response to this, the Defendant told the victim and others in the club that he was going to return and commit some violence. Mr. Fowlkes stated that he decided not to challenge the admissibility of this evidence under Tennessee Rule of Evidence 404(b)[1] because he thought the court would rule against him. That is, he did not think that he had a viable basis for keeping this evidence out under the parameters of the Rule because the testimony went to motive, intent and possibly identity.

With respect to the Defendant's testifying at his trial, Mr. Fowlkes stated that he discussed it with the Defendant and told the Defendant that the decision was his. Mr. Fowlkes testified that the Defendant did not tell him that he wanted to testify, and instead decided not to.

The Defendant also testified at the post-conviction hearing. He stated that Mr. Fowlkes visited him in jail prior to trial, but did not discuss the case with him. According to the Defendant, Mr. Fowlkes "just gave me some papers and told me to look over them, but he didn't, that was it." He testified that he told Mr. Fowlkes that he wanted him to interview Mr. Reames. He explained that he saw Mr. Reames when he went into the club that night, and that Mr. Reames was on his right. He stated that he had been in the club not even two minutes when he heard the shots. He ducked, saw the victim on the floor in front of him, and ran out of the club. He did not see Mr. Reames as he left the club. He did not see who shot the victim.

The Defendant testified that he told Mr. Fowlkes that he wanted to testify at his second trial. He stated that he told Mr. Fowlkes this at both the beginning and end of the trial. Mr. Fowlkes responded that "there wasn't no need to." He would have testified that he did not shoot the victim and did not even have a gun that night. He stated that he did not know the victim. He acknowledged the altercation the month before the shooting, and acknowledged having told the security guards, "ya'll better let me go before I come down here and blow this place up and kill all of ya'll man." He explained, however, that he did not know if the victim had been one of the guards involved in the incident, and stated that his declaration had simply been made in the heat of the moment. He testified that he had not meant the threat seriously and that it had not been directed at the victim. The Defendant stated that he had not been harboring any ill will toward the security guards on the night of the shooting. On cross-examination, the Defendant stated that he did not know that he had the right to testify.

At the conclusion of the evidentiary hearing, the trial court judge stated,

---

[1] "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes." The Advisory Commission Comments to the Rule provide that "other purposes" may include identity, motive, and intent.

It was a well fought trial twice. Mr. Fowlkes pulled off a miracle in the first one, based on the proof, by getting a hung jury because quite honestly the proof was overwhelming in this case.

The post-conviction court subsequently entered a comprehensive order setting forth findings of fact and conclusions of law. In addressing the issues raised in the Defendant's petition, the trial court ruled that Mr. Fowlkes' decision not to call Mr. Reames as a witness was "a strategic decision." The court also determined that the Defendant had failed to establish prejudice resulting from the decision because "Mr. Reames's testimony at the evidentiary hearing contradicted [the Defendant's] testimony" with respect to their relative positions to each other and the victim at the time the gunshots were fired. The trial court concluded that "Mr. Reames's testimony, therefore, would not have fully exonerated [the Defendant] or necessarily created reasonable doubt in light of the evidence against [the Defendant]."

With respect to Mr. Fowlkes' decision to not request a Rule 404(b) jury-out hearing, the trial court determined that the evidence at issue was admissible even in the face of a 404(b) challenge and that trial counsel did not thereby err. With respect to the Defendant's alleged deprivation of his right to testify, the trial court specifically accredited Mr. Fowlkes' testimony in this regard over that of the Defendant. Accordingly, the trial court found no constitutional violation on this ground.

Finally, with respect to the Defendant's allegation that the trial court gave the jury an improper instruction with respect to his sentencing, the trial court found that the instruction had been correct and that this assertion was therefore without merit.

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing. See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the defendant's lawyer, and actual prejudice to the defense caused by the deficient performance. See id. at 687; Burns, 6 S.W.3d at 461. The defendant bears the burden of establishing both of these components by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461. The defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made, see Strickland, 466 U.S. at 690; Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. See id. "However, a trial court's conclusions of law-- such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

Our review of the record convinces us that the trial court made no error in its rulings on the Defendant's allegations of ineffective assistance of counsel. A trial lawyer's decision on whether to call a particular witness after having spoken with him or her is a classic example of trial strategy, and one that we will not second-guess. We note that, in the Defendant's first trial, Mr. Reames did not testify, yet the jury did not convict the Defendant. The Defendant has simply failed to prove either that Mr. Fowlkes erred in declining to call Mr. Reames to the witness stand, or that he was prejudiced thereby. This issue has no merit.

A trial lawyer's decision on whether to object to the admissibility of evidence is another classic example of a strategic decision where it is informed by knowledge of the evidence sought to be introduced and the applicable rule or rules governing its admission. Here, Mr. Fowlkes testified that he did not request a jury-out hearing with respect to the Defendant's threats against employees of the nightclub. Mr. Fowlkes' decision was based on his familiarity of the evidence and his analysis

of the applicable rule of evidence. Mr. Fowlkes' decision in this regard was not the result of professional incompetence. This issue is without merit.

As to the Defendant's allegation that he told Mr. Fowlkes that he wanted to testify, the trial court specifically accredited Mr. Fowlkes' testimony over the Defendant's in this regard. Mr. Fowlkes testified that the Defendant determined that he did not want to testify. We will not second-guess the trial court's determinations of credibility. This issue is without merit.[2]

Finally, the Defendant's contention about the trial court's jury instruction is waived. The Defendant pursued a direct appeal of his conviction, see State v. Charlie M. Gardner, No. M1999-02214-CCA-R3-CD, 2001 WL 306227 (Tenn. Crim. App., Nashville, Mar. 30, 2001), in which any issue about jury instructions could have been raised. "A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented . . . ." Tenn. Code Ann. § 40-30-106(g). The Defendant's claim does not qualify for either of the exceptions available to this rule. See id. § 40-30-106(g)(1),(2). Accordingly, the Defendant is entitled to no relief on this ground.

We affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

---

[2]The Defendant was tried prior to our supreme court's issuance of Momon v. State, 18 S.W.3d 152, 162 (Tenn. 1999), which sets forth procedural guidelines for placing on the record a criminal defendant's waiver of his or her right to testify. Momon has no retroactive effect, however. See id. at 162-63.